# EXHIBIT A

Filing # 187703840 E-Filed 12/09/2023 07:09:01 PM

Case Number: CACE-23-022237 Division: 04

IN THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO:

CAPELLI TRADE, LLC., d/b/a STRAIGHT AHEAD BEAUTY,

        Plaintiff

vs.

TRUSTPILOT, INC., a Foreign corporation,

        Defendant,

_____/

## COMPLAINT

Plaintiff CAPELLI TRADE, LLC. d/b/a STRAIGHT AHEAD BEAUTY ("SAB") sues against Defendant TRUSTPILOT, INC. ("TRUSTPILOT" or "Defendant"), seeking damages for defamation, tortious interference with business relationships, violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") and a temporary and permanent injunction, and in support, states as follows:

### JURISDICTION, PARTIES, AND VENUE

1. This Court has jurisdiction over this action since the amount of damages sought exceeds fifty thousand dollars ($50,000.00) exclusive of interest, attorney's fees and costs, and due to the fact that SAB seeks, among other things, injunctive relief.

2. SAB is a Florida limited liability company and manufacturer of beauty products located in South Florida that sells solely business to business and on our its website www.straightaheadbeauty.com.

3. Straight Ahead Beauty was founded based on two principal ideas ... that style and

1

beauty are for everyone and achieving yours on a daily basis should not be a struggle. Its founder's imagination combined with a team of experts that have over 40 combined years of experience has inspired a line of hair tools and rejuvenating hair care that not only utilize the best materials available, but that also embrace the latest cutting-edge technologies. SAB strives to bring new and innovative salon-quality tools into its customers' homes.

4. SAB frequently sells skin care and beauty enhancing products online and via third party, independent business vendors both virtual and with physical locations to the consuming public.

5. SAB often sells cosmetics and cosmetic-related products to independent vendors operating point-of-sale locations at various malls and similar locations through kiosks and the like and is not otherwise affiliated with these independent vendor businesses aside from the fact that said businesses are selling SAB's various products.

6. SAB has been in business since its February 2016 incorporation and has hundreds of thousands of satisfied customers. SAB's success has come, in large part, due to the quality of its manufactured products, exemplary customer service and a willingness to work with businesses and its customers, including the resolution of any disputes which may arise (as often happens in every business), and an overall ability to deal fairly and honestly with its customers.

7. Defendant TRUSTPILOT is a foreign corporation which has done and continues to do business in Florida.

8. TRUSTPILOT was founded in 2007 and according to its website was formed with a vision to create an independent currency of trust. Defendant is a digital platform that claims to bring businesses and consumers together to foster trust and inspire collaboration.

Defendant proclaims that it is free to use, open to everybody, and built on transparency.

9. TRUSTPILOT goes on to describe itself as a host of reviews that help consumers shop with confidence and deliver rich insights to help businesses improve the experiences they offer. Furthermore, the more consumers use its platform and share their own opinions, the richer the insights it offers businesses, and the more opportunities they have to earn the trust of consumers from all around the world. Nearly 1 million new reviews are posted each month and the site allegedly offers free services to businesses.

10. TRUSTPILOT generates significant profit(s) from its review business and website and its annual revenues routinely exceed $130,000,000.00 (U.S.). TRUSTPILOT is the creator of the rating system discussed more fully below and sets forth the purportedly objective criteria by which businesses, such as SAB, are "rated".

11. Venue lies in this Court in that a substantial portion of the events giving rise to the claims asserted occurred in Broward County, Florida.

12. TRUSTPILOT is subject to personal jurisdiction in this Court pursuant to Section 48.193, Florida Statutes, because, among other things, it conducts substantial and not isolated business activities in this State, engages in business ventures in this State, committed a tort in this State and/or engaged in activities outside of this State which injured persons or property in this State.

13. Any consumer or business can access SAB's information via TRUSTPILOT's website, which is www.trustpilot.com.

14. All conditions precedent to this lawsuit have been performed, waived, or excused.

15. SAB has retained the undersigned law firm to represent it in this action and is

obligated to pay the undersigned reasonable attorney's fees and costs.

## GENERAL ALLEGATIONS

### Defendant's Business Model v. Reality

16. Defendant portray itself as a consumer advocate and represents itself as honest and transparent, designed to provide consumers with accurate appraisals of businesses and the trustworthiness of those businesses.

17. Defendant is aware that it is often considered the "go to" source for consumers seeking to investigate businesses, and, based upon Defendant's portrayal of itself as unbiased, honest and transparent, that the consuming public relies on Defendant's services in selecting businesses to utilize, purchase from and/or employ.

18. Defendant mostly communicates with the general public through its website (the "TRUSTPILOT website"), which allows users to search for information by company name. That search will reveal, among other things, a "TRUSTPILOT rating," whether the company is "Good" or "Bad", the type of entry, and other general corporate information.

19. Defendant intends by its actions to obtain the trust and confidence of consumers and businesses in the marketplace and is well aware of its reputation and on the consumer's reliance upon the information reported and published by Defendant.

20. According to Defendant, millions of users visit the TRUSTPILOT website every month|.

21. The reality is, however, that Defendant is not objective, nor is it an unbiased communicator of marketplace trust as they represent.

### The Rating System

22. Defendant created and adopted a system which allegedly based on an objective, unbiased formula, would give businesses a letter rating from 1 to 5 and a classification of "Excellent" to "Bad". According to Defendant, this allegedly objective and unbiased formula for determining a business's "rating" is not a mere average of all the reviews from 1 to 5 stars, but involves multiple and other factors imposed upon the rating by TRUSTPILOT and its agents and employees.

23. Contrary to Defendant's representations, its rating system is anything other than objective and/or unbiased.

24. In fact, Defendant rarely performs any actual investigation of the businesses rated, nor do they rigorously and routinely, or fairly and objectively, perform the investigative and evaluative tasks with they represent in writing. As a result, the "rating" is wholly false and Defendant's business practices mislead the viewers of the TRUSTPILOT website, resulting in damage to the reputations of the businesses being reported, including SAB.

25. Although Defendant intentionally gives the impression that they rigorously investigate and approve every applicant before bestowing membership or assigning a "rating" the truth is far different.

26. For example, a business could receive a downgrade even if Defendant received a complaint it knew to be "false" and/or "baseless", and a businesses' decision to pay to Defendant appears to be a factor that determines its "rating".

27. A business contributor to TRUSTPILOT may receive further benefits and the ability to actually utilize its "rating" in marketing its business.

28. Additionally, because Defendant fails to do the proper due diligence on the businesses they "rate", they do not have sufficient information to properly weigh all of the

factors against each other. For instance, Defendant appears to weigh the number of complaints received against the actual number of customers a particular business has, not taking into account that the substantial majority of complaints may be coming from individuals or entities that were not, and are not, customers of that business. Such a practice results in a negative impact on that businesses grade and is misleading to the users of the TRUSTPILOT website, yet to be disclosed. As a result, two similar companies with the same number of complaints could have two different "ratings".

29. In 2020, the BBC reported that TRUSTPILOT had over 2 million fake reviews on its website that negatively impacted businesses. Regardless, fake reviews are just part of the countless misleading and deceptive aspects of the Defendant's rating system.

30. TRUSTPILOT has not only been criticized for the publication of fake reviews, but also for the fact that it permits companies to remove negative reviews by way of "buy-outs".[1]

31. Defendant does not have the necessary staff, or the time, to go through the claimed rating process for businesses listed on the TRUSTPILOT website.

### Plaintiff's History with Trustpilot

32. Defendant has listed SAB on the TRUSTPILOT website since in or about 2021. Since that time, SAB's "rating" has fluctuated on the TRUSTPILOT website but is currently a "1.6". Consumers and other businesses viewing the SAB on TRUSTPILOT and, presumably relying upon same in deciding whether or not to buy or do business with SAB, are informed by TRUSTPILOT that the SAB is a "Bad" business.

33. SAB's "rating" is absolutely not consistent with its actual business practices or overall customer satisfaction.

---

[1] References found on Wikipedia review of Trustpilot.

34. Review of straightaheadbeauty.com

Oct 4, 2023

**Scamming Fraudulent Company**

Why can't we give negative stars? This company scams people out of their money. They steal money as well by adding tips to themselves. They are pushy liars. Nothing but a fraudulent company!!

**Date of experience:** September 30, 2023

35. When Defendant receives complaints pertaining to the SAB, the vast and super majority of complaints pertain to independent vendor and kiosk sales businesses which merely sell Straight Ahead Beauty products.

36. In fact, the complainants with regard to the independent sales businesses often report the vendor itself for pricing issues, sales tactics or the like as opposed to actual SAB product issues or concerns. Currently, the majority of the complaint data on the TRUSTPILOT website portray the SAB in a deceptive and false light by tying Straight Ahead Beauty and its products into a complaint against a vendor and/or its sales or business tactics.

37. As and for and by way of example regarding complaints impacting SAB's rating and label that have absolutely nothing to do with the SAB's products, a consumer posting the following in or about September of 2023:

**Agree with all the reviews. Don't buy this product.**

Agree with all the reviews. Conned while visiting the Nashville Opry mills mall from England. The straightener used on my hair in the demo, quite clearly wasn't the one I was sold. Total lies to sell a rubbish product at a premium price. You should be ashamed

7

working on these kiosks. Lying and cheating customers out of hard earned money. Returned to England Very upset and cheated and conned !!!

**Date of experience:** September 22, 2023

38. SAB has absolutely nothing to do with mall kiosks or similar businesses selling its products and the business methods that the respective kiosk owners utilize while selling said products and involving the SAB in these situations causes damages to SAB's business and product reputation. In fact, in matters where SAB is directly involved, it takes the situation seriously and makes the complainant customers whole in order to encourage its positive business image. In short, the Defendant for want of a vendor business name and information in a complainants' complaint simply attribute the complainant's negativity to the product when it is clear that the quality and performance of the SAB's product is not at issue.

39. SAB has made efforts to communicate with Defendant. Nonetheless, Defendant has failed to meaningfully respond to SAB's efforts where it is or should be clear that any and all complaints not pertaining to SAB's products in the least should not be associated with the manufacturer SAB.

40. Defendant will consider *any* complaint from *anyone* regarding SAB and will apparently count any such complaint as a negative factor in rating SAB. But the substantial majority of SAB's complaints come from individuals that have no issue(s) with SAB's products and are not SAB website customers, and thus, should not be considered in Defendant's evaluation of the SAB's business. The net result of this practice causes SAB to receive a lower "rating".

41. Defendant is fully aware of the issues with its rating system, particularly the inaccuracies which result with respect to SAB's "rating" and "label". Nonetheless, Defendant,

in a flagrant disregard for the rights of SAB, existing and prospective customers of SAB and the business community in general, failed and refused to correct this misleading and deceptive practices in reporting false or inaccurate information on the TRUSTPILOT website. Defendant's motivation may be financial gain. Regardless of the motivation, Defendant's actions as described herein are malicious and conducted with a blanket, wanton and reckless disregard for the truth and the rights of SAB.

42.   SAB is aware of the fact that numerous business customers review the TRUSTPILOT website and have seen the published low rating. As a result, a sizable percentage of SAB's business customers, after reviewing the TRUSTPILOT website, have contacted SAB to cancel further orders believing the Defendant's "rating" is accurate, meaningful and a true reflection of SAB's business practices or simply not wanting to associate themselves with the low rating and perhaps become an unwilling and/or uninvolved target of the rating system. These cancellations result in SAB's loss of substantial annual revenues.

43.   At no time does Defendant publish or advise these existing and prospective customers of the true facts, the undisclosed facts or the deceptive and misleading nature of the Defendant's rating system, despite Defendant's knowledge of same.

<div align="center">

**COUNT 1**
**<u>DEFAMATION</u>**
*(Against TRUSTPILOT)*

</div>

44.   SAB re-alleges and re-avers allegations number 1 through 44 above as if specifically set forth herein.

45.   TRUSTPILOT's statements on its website that SAB is a "1.6" is not "pure opinion". Publications of the "1.6" give rise to the inference that there are underlying, undisclosed facts justifying TRUSTPILOT's conclusion that the SAB is a "1.6" or a "Bad"

business. Nor is the underlying and undisclosed information otherwise known or available to the public.

46. TRUSTPILOT is calling SAB, as a business, a failure, untrustworthy, scandalous, and a whole host of other things represented by the "1.6" label. A reasonable person viewing the TRUSTPILOT website would believe that TRUSTPILOT arrived at such a conclusion based upon underlying facts.

47. Indeed, that is exactly what TRUSTPILOT wants the consuming public to believe by representing on its website that it is a consumer advocate and an unbiased organization designed to provide *accurate* appraisals of businesses and the *trustworthiness* of those business; that its goals are to create a community of trustworthiness, set standards for business and denounce marketplace behavior; that it is backed by the standard, credibility and recognition of its name and reputation; that is closely monitors the businesses it rates; and that it should be relied upon as the public's key advisor's, most reliable evaluators, and most objective experts on trust in the marketplace.

48. TRUSTPILOT also advises the consuming public that SAB's low rating is based upon transparent and unbaised factors, and objective formula and a great deal of work and investigation.

49. However, this is simply not true.

50. TRUSTPILOT did not do any homework or investigation prior to labeling SAB.

51. TRUSTPILOT does not actually rely upon those factors and does not have a majority of the factual information relating to SAB to allow TRUSTPILOT to rely upon any such factors. By publishing to the consuming public that it has such information and weighs same, TRUSTPILOT is being untruthful.

52. Since TRUSTPILOT does not have any substantive facts relating to evaluation, its label of SAB is fraudulent.

53. TRUSTPILOT does not disclose that the "1.6" label is based, at least in part, upon SAB's refusal to pay TRUSTPILOT for removal services. As TRUSTPILOT is aware, it is the "rating" that is most likely to influence consumers when researching a business via the TRUSTPILOT website.

54. TRUSTPILOT does not disclose that the label is apparently based upon complaints generated from noncustomers of SAB sold at vendor and other point-of-sale locations having nothing to do with SAB or the quality of its products – yet TRUSTPILOT represents to the public that it only relies on actual customer complaints.

55. TRUSTPILOT does not disclose that it changes, on a daily or weekly basis, the factors it wishes to consider in labeling SAB as such.

56. Contrary to TRUSTPILOT's representations, TRUSTPILOT does not have an objective factual basis for the "rating" assigned to SAB and has not employed any formula it claims to use in its advertisement.

57. TRUSTPILOT basis for its labeling of Plaintiff, in great part, is based upon consumer complaints that have no merit against the SAB.

58. TRUSTPILOT does not disclose that many of the purported consumer complaints are without merit and/or factually baseless or that TRUSTPILOT does not actually consider the underlying merit of the purported consumer complaint when labeling SAB an "1.6".

59. TRUSTPILOT bases its label, in part, upon customer complaints which have allegedly been unresolved, when, in fact, SAB has resolved any and all customer complaints

that are within its power to do so. Aside from terminating relations with an independent vendor point-of-sale, the SAB has no mechanism to resolve or even discipline a salesman at a mall kiosk.

60. TRUSTPILOT does not disclose that it does not have adequate staffing to accurately conduct the investigation it claims to conduct in labeling SAB.

61. TRUSTPILOT does not disclose that the majority of the complaints are about salespersons not affiliated with the Plaintiff manufacturer.

62. Labeling SAB as such, after obtaining the trust and reliance of the consuming public that TRUSTPILOT is the "go to" source for accurate information on businesses, including SAB, without disclosing the underlying factual basis as to how the "1.6" was derived, constitutes defamation.

63. It is impossible to believe that a reasonable person would believe, given the entire context in which the publication is made, that TRUSTPILOT arrived at its conclusion without an underlying factual basis.

64. Clearly, TRUSTPILOT is doing more than simply calling SAB an "1.6"; TRUSTPILOT is conveying a message to the reader of its website that SAB is a "Bad", untrustworthy company that is "failing" at its profession, among other things. Moreover, TRUSTPILOT is purposely implying to the reader that, through its purported "investigation" and "accurate appraisal", it has acquired actual knowledge of the "fact" that SAB is bad, untrustworthy and "failing" business. This is the impression TRUSTPILOT seeks to give, yet the underlying facts are either incomplete inaccurate or not disclosed.

65. Moreover, TRUSTPILOT blatantly misrepresents the facts it supposedly relies upon and either does not have any such facts, has incomplete facts or has false facts.

66. The defamation described above has injured SAB and SAB has lost hundreds of thousands of dollars in business-to-business sales due to Defendants' misleading and biased ratings.

67. Such injuries include, but are not limited to, prejudice to SAB's ability to conduct its trade and business, and otherwise deterring third parties from dealing with SAB.

68. The injuries discussed above injure SAB's credibility in its industry, among other things.

69. The publication of defamatory statements of the nature described above is actionable per se.

70. TRUSTPILOT made the defamatory statements with the requisite intent to injure SAB in its business and reputation, with malice and/or with a reckless disregard for the truth.

71. The recipient's understanding of these statements was based on the falsity of TRUSTPILOT's misleading and deceptive information, the improper juxtaposition of certain facts so as to imply a defamatory connection, and/or the creation by TRUSTPILOT of a defamatory implication by omitting facts. Indeed, TRUSTPILOT's statement that SAB is an "1.6", apparently based upon undisclosed, inaccurate, and incomplete facts, is injuring SAB in its business and its reputation.

72. TRUSTPILOT made the statements with knowledge of the falsity of the statements and/or with reckless disregard for the falsity.

73. TRUSTPILOT's "rating" of SAB is not simply TRUSTPILOT's "pure opinion" of SAB. Instead, it is a conjured up, misleading and deceptive marketing ploy to further TRUSTPILOT's money-making scheme and image. Moreover, the "rating" is a word and a statement, which, in this instance, tells the viewers of the TRUSTPILOT website that SAB is an

awful company. Conduct such as that described above cannot be afforded any "privilege" or other constitutional protection TRUSTPILOT will surely seek to obtain.

74. As a direct and proximate result of TRUSTPILOT's conduct, SAB has suffered damages including, but not limited to, lost opportunities, diminished sales and trade relations, and harm to its goodwill associated with its on-going business.

WHEREFORE, Plaintiff STRAIGHT AHEAD BEAUTY prays that this Court enter Judgment in favor of Plaintiff and against TRUSTPILOT for all damages suffered as a result of these wrongful acts, and reserves its rights to amend to seek punitive damages in accordance with Fla. Stat. § 768.72, and all other appropriate relief as this Court deems equitable and just.

## COUNT II
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
(Against TRUSTPILOT)

75. SAB re-alleges and re-avers allegations numbered 1 through 44 above as if specifically set forth herein.

76. SAB has business relationships with existing, advantageous, and prospective customers, under which SAB has existing and/or prospective rights ("SAB's business relationships").

77. TRUSTPILOT is aware of SAB's business relationships.

78. TRUSTPILOT intentionally and unjustifiably sought out to interfere with SAB's business relationships by engaging in a course of conduct designed to damage SAB's reputation. TRUSTPILOT intentionally seeks to mislead the consuming public, which includes SAB's business relationships, into believing that TRUSTPILOT is an expert and accurate appraiser of the trustworthiness and marketplace standards for businesses, including SAB. However,

TRUSTPILOT is not an expert and does not provide accurate appraisals of the businesses for which it provides information.

79. With actual knowledge of SAB's business relationships, TRUSTPILOT interfered with same by engaging in the misleading and deceptive conduct more particularly described in paragraphs 46 through 76 above.

80. As a result of TRUSTPILOT's unlawful conduct and unjustified actions, SAB has suffered substantial damages.

81. TRUSTPILOT acted with malice and/or a reckless disregard for the truth and the interests of SAB.

82. TRUSTPILOT's actions amount to conduct sufficient to warrant the pleading and imposition of punitive damages as set forth in Section 768.72, Florida Statutes.

WHEREFORE, Plaintiff SAB prays that this Court enter Judgment in favor of Plaintiff and against TRUSTPILOT for all damages suffered as a result of these wrongful acts, and reserves its rights to amend to seek punitive damages in accordance with Section 768.72, Florida Statutes, and all other appropriate relief as this Court deems equitable and just.

## COUNT III
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
*(Against TRUSTPILOT)*

83. SAB re-alleges and re-avers allegations numbered 1 through 44 above as if specifically set forth herein.

84. This is an action pursuant to Florida Statutes 501.201,et seq., otherwise known as Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

85. SAB is a consumer, and the subject transactions are trade or commerce, as defined by FDUTPA.

86. The actions of TRUSTPILOT constitute unfair and deceptive trade practices, in that TRUSTPILOT's conduct offends established public policy, is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers and businesses alike.

87. Furthermore, TRUSTPILOT's actions constitute unconscionable commercial practices deception, fraud, false pretenses, misrepresentation and the known concealment and misrepresentation of material facts, all in violation of FDUTPA.

88. More specifically, TRUSTPILOT's acts and practices of representing, through its website, to the consuming public that it conducts a great deal of homework on the businesses it grades, that it conducts an investigation on the businesses it grades, that it is the expert on marketplace trust, that it provides accurate appraisals of businesses, that it is objective, that it is unbiased, and that its "ratings" are given after an analysis and evaluation, are false, misleading and deceptive.

89. The customers and potential customers of SAB rely heavily upon the information published by TRUSTPILOT.

90. TRUSTPILOT's acts and practices are false, misleading and deceptive because TRUSTPILOT does not do any of things it represents to do, i.e., it does not perform any homework, it does not conduct an investigation, it is not objective and it is not unbiased.

91. As a direct and proximate result of TRUSTPILOT's false, misleading and deceptive practices, conducted in its trade and commerce, SAB has suffered substantial damages due to the fact that, among other things, existing customers and potential customers decided not to do business with SAB after viewing TRUSTPILOT's website.

WHEREFORE, Plaintiff STRAIGHT AHEAD BEAUTY prays that this Court enter Judgment in favor of Plaintiff and against TRUSTPILOT for all damages suffered as a result of

these wrongful acts, for a declaratory judgment that TRUSTPILOT's acts and practices violate FDUTPA, for an injunction prohibiting TRUSTPILOT from continuing to engage in these wrongful acts, attorneys' fees and costs pursuant to Section 501.2105, Florida Statutes, and all other appropriate relief as this Court deems equitable and just.

<div align="center">

**COUNT IV**
**INJUNCTIVE RELIEF**
(Against TRUSTPILOT)

</div>

92.     SAB re-alleges and re-avers allegations numbered 1 through 44 above as if specifically set forth herein.

93.     SAB has expended significant time and resources in establishing its business and generating a good reputation and goodwill in the community and with other businesses.

94.     SAB has expended significant time and resources in establishing its business and generating a good reputation and goodwill in the community.

95.     SAB has been and will continue to be irreparably harmed, unquantifiable by money damages, if TRUSTPILOT's wrongful conduct is not enjoined. Furthermore, future harm, by way of losing additional business customers under contract and attracting prospective business customers and website traffic, will definitely result from TRUSTPILOT's unyielding actions. The impact on SAB's business cannot be understated. Virtually all of SAB's business comes from business to business sales and its products are sold at independent point-of-sale sites and the like; undoubtedly, these prospective relations, contemplating a business transaction with SAB, will view the TRUSTPILOT website. More importantly, and as set forth above, TRUSTPILOT's actions have caused, and will likely continue to cause, existing SAB business customers to rescind contracts.

96. SAB has a clear legal right to injunctive relief in that TRUSTPILOT's actions are contrary to law and because SAB has enforceable agreements with its existing customers, which TRUSTPILOT has blatantly disregarded, even with knowledge of the same. TRUSTPILOT's actions also constitute unfair and deceptive trade practices and violate FDUTPA, thus entitling SAB to injunctive relief pursuant to Section 501.211, Florida Statutes.

97. Similarly, the constant threat of losing its business customers and the inability to obtain prospective business customers, to which SAB invests significant resources, makes quantifying its damages very difficult. As such, SAB does not have an adequate remedy at law to compensate it for TRUSTPILOT's illicit and deceptive conduct.

98. Moreover, the failure to grant the relief requested herein would likely result in continued and ongoing harm to SAB.

99. Protecting SAB's legitimate business interests in its contracts and/or business relationships certainly serves the public interest. Additionally, the public interest would not be served by allowing TRUSTPILOT to continue to engage in the course of conduct described herein.

100. SAB has a substantial likelihood of success on the merits.

WHEREFORE, Plaintiff SAB prays that this Court enter a temporary and permanent injunction against TRUSTPILOT, preventing them and those acting in concert with TRUSTPILOT, from publishing Plaintiff's information on their database(s), from publishing Plaintiffs "grade" or any other false, misleading and defamatory content concerning Plaintiff, or alternatively, directing TRUSTPILOT. to continue to indicate that Plaintiff's information is "unavailable" at least during the pendency of this action, and all other appropriate relief as this Court deems equitable and just.

Respectfully submitted,

        LAW OFFICE OF ROBERT P. KELLY
        Attorneys for SAB
        2699 Stirling Road, Suite C403B
        Fort Lauderdale, Florida 33312
        954.454.5555(Telephone)
        954.342.8117(Facsimile)

        By:_____
        Robert P. Kelly, Esq.
        Florida Bar No. 162930
        rpkelly@rpkellylawoffice.com